UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

WEST GALENA REAL ESTATE, LLC, et al,                    Case No. 08-54048
                                                        Chapter 11
                              Debtor.

_____/                      Hon. Marci B. McIvor

## OPINION GRANTING NAREP'S MOTION FOR TRANSFER OF VENUE

On June 10, 2008,  Debtors West Galena Real Estate, LLC ("Galena Real

Estate"), West Galena Holdings, LLC ("Galena Holdings") and Lot 129, LLC ("Lot 129")

filed for bankruptcy in the Eastern District of Michigan.   NAREP II US REIT Asset

Holdings, LLC ("NAREP") filed this Motion For Transfer of Venue, seeking to move the

administration of this bankruptcy case from Michigan to Colorado.  For the reasons set

forth below, this Court GRANTS NAREP's Motion.


FACTUAL BACKGROUND

The Debtors, West Galena Real Estate, West Galena Holdings, and Lot 129, are

real estate developers. The Debtors' project involves the development of hotel and

condominium units on prime lots located near Telluride, Colorado ski and golf resorts.

Each of the Debtors is responsible for the development of a discrete portion of the

overall project.

Galena Real Estate is a Michigan limited liability company having its legal

address at 7768 Purple Sage, Park City, Utah 84098. Galena Real Estate plans to

develop a resort known as the Rosewood Resort.  Construction of the Rosewood

Resort has not begun, although Galena Holdings and Galena Real Estate have obtained all approvals (the "Entitlements") necessary to begin construction once Debtors secure adequate construction financing.

Galena Holdings is a Michigan limited liability company with its legal address at 7768 Purple Sage, Park City, Utah 84098. Galena Holdings is fee owner of approximately 5.3 acres of real estate in the Town of Mountain Village, Colorado. Galena Holdings plans to develop the 75-room resort hotel (the "Rosewood Hotel") on part of the property.

Lot 129 is a Colorado limited liability company with its legal address at 307 East Colorado Avenue, Telluride, Colorado 81435. Lot 129 is the fee owner of Lot 129 in the Town of Mountain Village, Colorado. Lot 129 developed the Courcheval Development consisting of six luxury "ski-in, ski-out" condominiums. Lot 129 has no other substantial assets besides the Courcheval Development.

Aaron B. Honigman is the sole owner and manager of each Debtor. His address is 7768 Purple Sage, Park City, Utah.

The Debtors' secured lender is NAREP II US REIT Asset Holdings LLC ("NAREP"). NAREP is a Delaware limited liability company having its principal place of business at 12700 Whitewater Drive, Minnetonka, Minnesota 55343. As to all relevant loan documents with the Debtors, NAREP is, by assignment, the successor to NAREP II US TRS Assets Holdings, LLC.

On or about April 19, 2007, NAREP loaned the principal sum of $50,000,000 (the "Loan") to Lot 129, Galena Holdings and Galena Real Estate, jointly. The Loan is evidenced by, among other documents, the Loan Agreement and an accompanying

2

Secured Promissory Note ("Note"). The Debtors' obligations under the Loan Agreement and the Note are secured by, among other documents, a Deed of Trust, Assignment of Rents and Security Agreement ("Deed of Trust") dated April 19, 2007. In the Deed of Trust, Galena Holdings and Galena Real Estate both identified their legal address as being in Park City, Utah, and Lot 129 LLC identified its legal address as being in Telluride, Colorado. Galena Holdings and Galena Real Estate made identical representations in the Loan Agreement and the Note. The terms of the Loan Agreement, Note, Deed of Trust, and other loan documents were amended and modified pursuant to the First Amendment to Loan Agreement among the Debtors, Aaron Honigman, and NAREP, made on October 12, 2007.

NAREP perfected the lien granted by the Deed of Trust by recording the Deed of Trust in the real property records of the Clerk and Recorder for San Miguel County, Colorado on April 20, 2007. In addition to granting NAREP a lien on the real property described in the Deed of Trust, under the Loan Agreement and the Deed of Trust, the Debtors also granted NAREP a security interest in the personal property located on the real property in Colorado. NAREP's security interest in the Debtors' personal property was perfected by filing UCC-1 Financing Statements in the appropriate county and state offices in the State of Colorado. NAREP's liens, pursuant to the Deed of Trust and the Loan Agreement, are first priority, senior liens against both the personal property and the real property. In addition to the secured debt owed to NAREP, San Miguel County in Colorado has filed a secured claim for $183,321.03.

To date, only two creditors have filed claims in this case. Claims have been filed by San Miguel County and HKS Architects, Inc., located in Dallas, Texas. HKS filed

an unsecured claim in the amount of $482,287.90.  The Court has not yet fixed a claims

bar deadline.

The unsecured debt reflected on Debtor's Schedule F shows: (1) a liability to

Aaron Honigman, located in Utah, of $1,728,552.89; (2) a liability to entities related to

Aaron Honigman, also located at 7768 Purple Sage, Park City, Utah, of $3,018,513.30;

(3) a liability to Daniel Honigman, located in Jupiter, Florida, of $10,611,978.05; (4) a

liability to the Honigman Foundation, located in Michigan, in the amount of

$3,911,658.02; (5) liabilities to miscellaneous unsecured creditors in Colorado in an

unknown amount (claims are unliquidated); (6) a liquidated claim of Davis, Graham &

Stubbs, located in Colorado, in the amount of $74,246.11; and (7) smaller liabilities to

creditors in California and Texas.  Two Colorado creditors have asserted mechanics

liens against the Debtor.

On January 18, 2008, the NAREP Loan matured pursuant to the terms of the

Note. Debtors failed to pay the Note on maturity, which is an Event of Default under the

Note and the Deed of Trust.  By letter dated January 22, 2008, NAREP declared the

Note in default.  The unpaid principal sum due under the Note is $49,359,627.19,

excluding accrued interest, late fees, and other charges.

On February 15, 2008, NAREP filed with the Public Trustee of San Miguel

County, Colorado, a Notice of Election and Demand to foreclose upon the real property

subject to the Deed of Trust.  The foreclosure sale was scheduled for June 11, 2008.

Following a hearing on May 13, 2008, the district court for San Miguel County, State of

Colorado ("Colorado State Court") entered its Order Authorizing Sale.   On May 23,

2008, the Colorado State Court entered an order appointing M. Rich & Associates (the

4

"Receiver") as receiver over the Courcheval Development on Lot 129.

On June 2, 2008, the Debtors and Aaron Honigman filed in the Colorado State Court their Counterclaims and Third Party Complaint for Damages and Injunctive Relief and Jury Demand against NAREP and other parties, together with their Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion"), seeking to enjoin the foreclosure sale. Lot 129's Counterclaims and Aaron Honigman's Third-Party Complaint raise various Colorado state law lender liability claims.

On June 10, 2008, Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors' bankruptcy filings automatically stayed the foreclosure sale, and forced the Receiver to relinquish control of the Courcheval Development. Subsequently, the Debtors removed the state court foreclosure action, including their Counterclaims and Third-Party Claims, to the federal District Court for the District of Colorado; that action is now pending in the Bankruptcy Court for the District of Colorado.

On June 25, 2008, NAREP filed its Motion for Change of Venue in this Court, seeking to have Debtor's bankruptcy case transferred to the United States Bankruptcy Court for the District of Colorado pursuant to 28 U.S.C. § 1412, in the interests of justice and for the convenience of the parties. RK Mechanical, Inc., Shaw Construction, and Aplin Masonry join NAREP in its Motion.

Debtors oppose the motion to transfer venue alleging that Michigan is where management decisions are made and Michigan is where the professionals necessary to the success of the chapter 11 cases are located. RHR Management Services, L.P., Daniel Honigman, Aaron Honigman, HKS, Inc., and Foley, Bezek, Behle & Curtis join

5

Debtors in their opposition to the Motion.

On August 19, 2008, Debtor Lot 129 filed a Plan of Reorganization. Under the Plan, Debtor Lot 129 is proposing to surrender the assets of Lot 129, those being the completed condominiums in the Courcheval Project, and to retain the undeveloped land held by West Galena. The Plan states that Debtors are attempting to raise money to continue the development of the real estate. Debtors are not conducting any business activity at this time.

II.

ARGUMENT

**A.     VENUE IS PROPER IN THIS DISTRICT**

In order to determine where a case *should* be heard, this Court must determine if the venue where the case was filed is legally proper. In this case, this Court makes its initial finding that the Debtors three bankruptcy cases meet the legal requirements for venue in Michigan. 28 U.S.C. §1408(1) provides four alternative bases for venue. A bankruptcy case may be filed in any district:

> (1) in which the [I] domicile, [2] residence, [3] principal place of business in the United States, or [4] principal assets in the United States, of the person or entity that is the subject of such case have been located in the one hundred and eighty days immediately preceding such commencement, . . . or
>
> (2) in which there is pending a case under title 11 concerning such a person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

Debtors argue that both Galena Real Estate and Galena Holdings meet two of

6

the § 1408(1) bases for venue in this District, domicile and principal place of business, even though only one basis is necessary.

This Court finds that the Eastern District of Michigan is a legally sufficient venue for Galena Real Estate and Galena Holdings because Galena Real Estate and Galena Holdings are domiciled in Michigan. Galena Real Estate and Galena Holdings are limited liability companies ("llcs") organized under the laws of the State of Michigan with their registered offices in Detroit. A llc falls within the definition of a corporation under 11 U.S.C. §101(9)(A)(i). See 2 Collier on Bankruptcy ¶ 101.09. The domicile of a corporation (including llcs) is the state of its incorporation (or an llc's organization). *See In re Segno Communications, Inc.*, 264 B.R. 501, 506 (Bankr. N.D. Ill. 2001). Thus, both Galena Real Estate and Galena Holdings are domiciled in Michigan. Accordingly, venue is legally proper in Michigan.

Debtors also argue that venue is proper in Michigan for Lot 129 under two bases, affiliate to a pending case and principal place of business. This Court finds that venue is appropriate for Lot 129 because it is an affiliate to a pending case under 28 U.S.C. § 1408(2). Section 1408(2) provides that venue is proper in a district "in which there is pending a case under title 11 concerning such person's affiliate . . ." Galena Real Estate and Galena Holdings are affiliates of Lot 129 because all three debtors are 100% owned by Aaron Honigman. 11 U.S.C. § 101(2) (multiple entities owned by same individual are affiliates of each other). *See also* 11 U.S.C. § 101(31)(E) (an insider of an affiliate is an insider). The broad definition of affiliate is designed to enable different bankrupt entities with interests in common to be administered together. *In re H & S Transport Co., Inc.*, 55 B.R. 786 (Bankr. M.D. Tenn. 1982) (three corporations are

affiliates when one individual owns 100% of one corporation and 50% of each of other two corporations). *See also In re Liberty Livestock Co.*, 198 B.R. 365, 371 (Bankr. D. Kan. 1996) (two corporations are affiliates when same individual is sole shareholder of each).

Because this Court finds that venue is proper in Michigan for Galena Real Estate and Galena Holdings under the "domicile" criteria of 28 U.S.C. § 1408(1) and because venue is proper in Michigan for Lot 129 under the "affiliate" criteria of 28 U.S.C. § 1408(2), this Court need not reach a decision on whether Michigan is the principal place of business for any of those entities.

**B.    THE STANDARD FOR TRANSFER OF VENUE WHEN VENUE IS PROPER**

While venue is legally proper in Michigan, the issue in this case is where venue *should* be, either in the interest of justice or for the convenience of the parties.  This policy is set forth in 28 U.S.C. § 1412 which provides a discretionary standard for transfer of venue:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Under the law within the Sixth Circuit, 28 U.S.C. § 1412 applies only to cases where venue is proper, such as the Debtors' cases.  *Thompson v. Greenwood*, 507 F.3d 416,424 (6th cir. 2007)(bankruptcy court cannot retain improperly venued case over timely objection of party in interest).  *"A heavy burden of proof rests on the moving party to demonstrate the balance of convenience clearly weighs in his favor."* *In re Lionel Corn.*, 24 B.R. 141, 142 (Bankr. S.D. N.Y. 1982).  Transferring venue of a bankruptcy

8

case is not to be taken lightly, because transfer is a cumbersome disruption of the chapter 11 process. *Enron*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002). The court in *Enron* states:

> A debtor's choice of forum is entitled to great weight if, . . . venue is proper. This is so because "[w]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed."

*Id.* (citations omitted). Although the movant bears the burden of showing that a transfer is in the interest of justice or is necessary for the convenience of the parties, the decision whether to transfer an action ultimately lies within the Court's discretion. *Foursquare Properties, Joint Venture I v. Akins Keyboard Sales, Inc.,* 54 B.R. 529, 531 (Bankr. W.D. Mich. 1985).

While the Court gives considerable deference to a debtor's choice of venue, a debtor's choice must be grounded in an actual connection to the chosen forum. When the debtor's choice of venue is challenged, bankruptcy courts have consistently looked to the following factors in determining whether transfer is appropriate: (1) the proximity of creditors to the court; (2) the proximity of the debtor to the court; (3) the proximity of necessary witnesses; (4) the location of assets; and (5) the economics of administration of the estate. *In re HME Records, Inc.,* 62 B.R. 611, 613 (Bankr. M.D. Tenn. 1986); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.* (*In re: CORCO*), 596 F.2d 1239 (5th Cir. 1979). In order to determine whether venue should be transferred, the Court must apply the above-listed factors to the facts of the case.

### A. Proximity of Creditors to the Court

While NAREP, by far the largest creditor in the case with its claim of approximately 53 million dollars, argues for a transfer of venue to Colorado, NAREP is located in Minnesota.  The other large creditors are located in Utah (Aaron Honigman for approximately 4.7 million), Florida (Daniel Honigman for approximately 10.6 million), Texas (Rosewood Hotels and HKS Architects together for approximately $582,000), and Michigan (the Honigman Foundation for approximately 3.9 million).  For all these creditors, with the exception of the Honigman Foundation, neither Colorado or Michigan is a logical choice for venue.  However, when considering this factor, it strikes the Court that the creditors who should be given the most consideration are not the large creditors who have the ability to retain counsel anywhere, but the small creditors, who may well go unrepresented if required to prosecute their claims in a venue far removed from the location of the Debtors' business.

In this case, the creditors who will be most impacted by the location of the bankruptcy case are trade creditors, the local taxing authorities, and creditors with mechanics liens.  These parties are in Colorado.  Given that the creditors with the largest monetary claims, with the exception of the Honigman Foundation, are not located in either Michigan or Colorado and have the financial ability to go to either venue, the proximity of creditors test is most relevant to the smaller creditors.  Since these creditors are primarily located in Colorado, the Court finds that the proximity of the creditors test favors transferring venue to Colorado.

**B.    Proximity of the Debtor to the Court**

Each Debtor represented in the Loan Documents that its business is primarily

conducted in either in Utah (Galena Holdings and Galena Real Estate) or Colorado (Lot

129).  Their Debtors' counsel issued a letter stating:

> Lot 129's business is primarily conducted at the Lot 129 Property,
> West Galena Holding's business is primarily conducted at the
> West Galena Holdings Property, and West Galena Real Estate's
> business is primarily conducted at the West Galena Real Estate
> Property. No Borrower maintains any office space of its own,
> except for shared space in a sales center. The address of the office
> at which the organizational and financial records of Lot 129 is kept
> at 307 East Colorado Ave., Ste. 203, Telluride, CO 81435-3081.
> The address of the office at which the organizational and financial
> records of West Galena Holdings and West Galena Real Estate are
> kept is 7768 Purple Sage, Park City, UT 84098.

(Honigman Firm Opinion, Exhibit A, at 7-8.)

Aaron Honigman, the Debtors' sole member and manager, resides in Utah

(where business is primarily conducted for Galena Holdings and Galena Real Estate),

and owns a beneficial interest in a home in Telluride, Colorado (where business is

primarily conducted for Lot 129).   The business of the Debtors is to develop property in

Colorado.  Each of Debtors' governing articles provide that the sole business "is

acquiring, developing, owning, holding, selling, leasing, transferring, exchanging,

managing and operating the real estate" located in Colorado, and transacting lawful

business that is incident, necessary, and appropriate to accomplish these business

purposes.

Debtors argue that the "proximity of the Debtor" factor favors keeping venue in

Michigan because: (1) Debtors' management is in Michigan; and (2) the Debtors'

problems are financial and those who can solve them are located in Michigan.  Debtors

cite *Enron*, 284 B.R. at 393-394 and *In re Commonwealth Oil Refining Co, Inc.*

*(CORCO)*, 596 F.2d 1239, 1248 (5th Cir. 1979)(courts consider the proximity of the

management to the court, not the proximity of operations) to support their argument. Debtors cases are easily distinguishable from the *Enron* and *CORCO* cases. Debtors have not articulated who "management" is or what management decisions are made in Michigan. Debtors are not currently engaged in construction or land development; there are no employees and there is no business activity to manage. Debtors primary activity in this bankruptcy is raising funds so that Debtors will be able to operate their business in the future. Debtors' principal is Aaron Honigman and he is located in Utah. Debtors professionals are in Michigan, but that fact does not persuade the Court that Michigan is the appropriate forum for the Debtors. Modern technology (email, videoconferencing) make it possible for Debtors' professionals in Michigan to communicate with Debtors' principal in Utah and Debtors' professionals in Colorado. The Court finds that the Debtors have virtually no connection with the State of Michigan, other than the fact that some of Debtor's professionals are located in Michigan.

**C.    The Proximity of the Witnesses Necessary to the Administration of the Estate.**

The "proximity of the witnesses" factor cannot be evaluated without considering the specific issues in this case. The primary issue in this case is whether Debtors can renegotiate, either consensually or non-consensually (through a Plan cramdown), the debt to their secured lender, NAREP. Therefore, the value of Debtors real estate is pivotal for determining whether Debtors will be able to reorganize and continue as a going concern, or whether Debtors will need to propose a reorganization involving a real estate sale, or whether Debtors will be required to liquidate their assets. Additionally, the value of the real estate will impact whether Debtors may borrow on a post-petition

12

secured basis, whether Debtors can attract new investors, whether the secured parties'
interests in their collateral are adequately protected, and whether the stay should be
lifted to allow the foreclosure to continue.

Credible testimony as to the value of Debtors' assets is most likely to come from
witnesses familiar with real estate values in Colorado and with values of luxury real
estate near ski resorts. While expert witnesses may come from anywhere, witnesses
with an expertise in the type of real estate owned by Debtors are unlikely to be based in
Michigan.

In addition, to the extent that there are issues involving the extent and validity of
liens or objections to claims, the parties litigating their claims are primarily residents of
Colorado.  If  Debtors have executory contracts or unexpired leases, the parties to those
contracts and leases are likely located in Colorado.

Based on the nature of this case, and the issues that will arise in a single asset
real estate case, the Court finds that the "proximity of the witnesses" factor favors
transferring venue to Colorado.


**D.      The location of the assets**

This case is a single asset real estate case where the real estate is located in
Colorado.  Many bankruptcy courts have found that, where a debtor's real property is
the primary asset in a case, the interests of justice and efficiency favor venue in the
district where the real property is located. *In re Pavillion Place Assocs.*, 88 B.R. 32, 36
(Bankr. S.D.N.Y. 1988) ("In virtually every single asset improved partnership real estate
case which we have seen, the court has transferred the bankruptcy to the jurisdiction

13

where the assets are located.") (citing cases). *See also, In re Enron*, 284 B.R. at 392 (abrogated on other grounds)(citing *In re Baltimore Food Sys., Inc.*, 71 B.R. 795, 803 (Bankr. D.S.C. 1986) ("Where a debtor's assets consist solely of real property, cases have held that transfer of venue is proper because matters concerning real property have always been of local concern and traditionally are decided at the situs of the property"); *In re Old Delmar Corp.*, 45 B.R. 883, 884 (S.D.N.Y. 1985) (finding that venue where real property located was the most capable of handling emergencies and keeping close contact with the property).

Debtors argue that, in this case, the location of "management" is more important than the location of the real estate because this is a rehabilitation case. *See In re Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 795 (7th Cir. 1998)(7th Circuit found that the location of financial management is more important than the location of the real estate in a reorganization). Debtors also assert that raising new capital, and renegotiating loan terms or cram down of a plan should be done where the Debtors' professionals are located, not where the real estate is located. *CORCO,* 596 F.2d 1239; *Cf.* Peachtree, 150 F.3d at 795.

This Court finds that the *CORCO* and *Peachtree* cases are distinguishable because, in both of those cases, the debtors had significant ties to the venue that the debtors favored. In this case, Debtors have made no showing that management is located in Michigan, or that Debtors are targeting Michigan entities as a source for investors. Given that Debtors' principal is located in Utah and that Debtors' real property is located in Colorado, the "location of the assets" factor favors transferring venue to Colorado.

14

**E.     The Economic Administration of the Estate.**

This Court has no doubt that the administration of this case will be efficient regardless of the venue.  However, the economics of this case strongly suggest that Colorado is the more appropriate venue for the following reasons: (1) the *sole asset* at issue, the Debtors' real property, is located in Colorado; (2) Debtors conduct their business out of Colorado and nearby Utah; (3) many creditors in this matter are located in Colorado; (4) Colorado law will govern any property disputes that may arise, and Colorado courts have more familiarity with the governing law (*Butner v. United States*, 440 U.S. 48 (1979)); (5) witnesses are most likely to come from Colorado or the Rocky Mountain region.

The Debtors argue that the most efficient and economic forum for this case is Michigan because the heart of this chapter 11 case is to work up a confirmable plan and chapter 11 cases can be administered most economically where the people charged with plan formation and negotiation are located. *CORCO*, 596 F.2d at 1247.

The Court rejects Debtors' argument for all the reasons set forth above.  There is no "management" in Michigan and Debtors' professionals have the ability to communicate with their client by email and telephone.   Given that neither Debtors nor a majority of the creditors are in Michigan, the court finds no grounds for holding that this case could be administered more economically in Michigan. The Court finds that the case would be more economically administered in Colorado.

**F.     Other Considerations**

This Court may also consider Michigan's or Colorado's interest in the

15

adjudication of this matter. *See, In re Condor Exploration, LLC*, 294 B.R. 370, 378 (Bankr. D. Colo. 2003)(citation omitted); *Pavillion Place*, 88 B.R. at 36 ("Improved real estate is a peculiarly local concern often better administered by a court in the district in which it is located.")(citations omitted).

The Court finds that Colorado has a significant interest in resolving the future of the Debtors' real estate within its borders. Through June 11, 2008, the Colorado State Court was actively involved in the litigation relating to the Loan and the real estate. One week before filing for bankruptcy protection, the Debtors and Aaron Honigman brought their own Colorado state law claims in the Colorado State Court – claims that they now seek to transfer to this Bankruptcy Court for resolution. Ultimately, these bankruptcy proceedings are about the future of real estate located in Colorado. The impact of Debtors' reorganization is in Colorado, and that fact militates strongly in favor of transfer of venue.

III.

<u>CONCLUSION</u>

While Debtors' choice of venue is entitled to great weight, 28 U.S.C. § 1412 grants courts the discretion to transfer venue "in the interest of justice or for the convenience of the parties." Case law has established a five part test to aid courts in making that determination. In this case, an analysis of those factors requires a finding that venue should be transferred from Michigan to Colorado. For the reasons set forth above, this Court GRANTS NAREP's Motion to Transfer Venue.

`Signed on August 29, 2008`

`                    /s/ Marci B. McIvor`
`_____`

16

Marci B. McIvor
United States Bankruptcy Judge